Robert Kiddie(pro hac vice)
rkiddie@devlinlawfirm.com
Timothy Devlin (pro hac vice)
tdevlin@devlinlawfirm.com
1306 N Broom Street, Suite 1
Wilmington, DE 19806
Devlin Law Firm LLC
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

Seth Wesley Wiener (CSBN 203747)
sethwiener@yahoo.com
Law Offices of Seth W. Wiener
609 Karina Court
San Ramon, CA 94582
Telephone: (925) 487-5607

Counsel for Plaintiff
Hybrid Audio, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| HYBRID AUDIO, LLC, | Case No. 3:17-cv-05947-JD |
| Plaintiff, | **PLAINTIFF HYBRID AUDIO, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| vs. | |
| | Hearing Date:  February 15, 2018 |
| ASUS COMPUTER INTERNATIONAL AND ASUSTek computer inc., | District Judge:  Hon. James Donato |
| Defendant. | |

Case No. 3:17-cv-5947-JD

Opposition to Defendants' Motion to Dismiss

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I. INTRODUCTION ......................................................................................... 1

II. BACKGROUND ......................................................................................... 2

    A. THE '281 PATENT........................................................................... 2

    B. BACKGROUND OF THE CURRENT LAWSUIT ................................... 4

III. LEGAL STANDARDS ................................................................................ 6

    A. MOTION TO DISMISS UNDER RULE 12(B)(6) .................................. 6

IV. ARGUMENT ............................................................................................. 7

    A. ASUS'S VARIOUS PROPOSED ABSTRACT IDEAS ARE ALL
       DIVORCED FROM THE LANGUAGE OF THE ASSERTED
       CLAIMS ........................................................................................ 8

    B. EVEN ASSUMING AN ABSTRACT IDEA, THE '281 PATENT
       CONTAINS AN INVENTIVE CONCEPT ........................................... 12

        1. The Claims Each Recite Individual Elements and an
           Ordered Combination that Go Far Beyond the Mere
           Abstract Idea Proposed by ASUS ................................................ 12

        2. The Claimed Inventions Improve the Operation of the
           Computer .................................................................................. 14

    C. A PREEMPTION ANALYSIS CONFIRMS THAT THE '281
       PATENT IS NOT ABSTRACT .......................................................... 16

    D. ASUS HAS NOT ADDRESSED EACH ASSERTED CLAIM OR
       ESTABLISHED THAT THE CLAIMS IT ADDRESSES ARE
       REPRESENTATIVE ........................................................................ 17

V. CONCLUSION........................................................................................ 19

Case No. 3:17-cv-5947-JD

Opposition to Defendants' Motion to Dismiss

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................ 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................... 6

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ......................................................................... 6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) .............................................................................. passim

*Mayo Collaborative v. Prometheus Labs.*,
    132 S. Ct. 1289 (2012) ...................................................................................... 7

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    841 F. 3d 1288 (Fed. Cir. 2016) ......................................................... 7, 13, 14

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed, Cir. 2016) .......................................................... 8, 11, 14

*TriDim Innovations LLC v. Amazon.com, Inc.*
    207 F. Supp. 3d 1073 (N.D. Cal. 2016) ........................................................ 9

*Digitech Image Technologies, LLC v. Electronics For Imaging, Inc.*
    758 F.3d 1344 (Fed. Cir. 2014) ..................................................................... 11

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017) ..................................................................... 11

*McRO, Inc. v. Bandai Namco Games America Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ..................................................................... 13

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ..................................................................... 13

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ............................................................13, 15, 16

*Trading Technologies Int'l v. CQG, Inc.*,
    2017 U.S. App. LEXIS 834 (Fed. Cir. Jan. 8, 2017) ...................................... 16

*Shelcore, Inc. v. Durham Indus., Inc.,*
        745 F.2d 621, 625 (Fed. Cir. 1984).................................................................................17

*StoneEagle Services, Inc. v. Pay-Plus Solutions, Inc.,*
        No. 13-2240, 2015 U.S. Dist. LEXIS 15144 (M.D. Fla. Feb. 9, 2015) ............................17

*Cronos Techs., LLC v. Expedia, Inc.,*
        2015 U.S. Dist. LEXIS 118976 (D. Del. Sept. 8, 2015) ....................................................18

*Modern Telecom Sys. LLC v. Earthlink, Inc.,*
        2015 U.S. Dist. LEXIS 33835 (C.D. Cal. Mar.17, 2015) ..................................................18

**<u>Statutes</u>**

35 U.S.C. § 101 ..................................................................................................................... 6

1    **I.      INTRODUCTION**

2          Plaintiff Hybrid Audio, LLC ("Hybrid Audio" or "Plaintiff") respectfully requests that this Court

3    deny Defendants ASUS Computer International and ASUSTeK Computer Inc.'s (collectively "ASUS"

4    or "Defendants") Motion to Dismiss (Dkt. 49) ("Motion") in its entirety.  In support thereof, Hybrid

5    Audio would show as follows:

6          Contrary to Defendants' Motion, even a cursory review of the asserted claims of U.S. Patent No.

7    RE40,281C (the "'281 patent," attached as Exhibit 2)[1] reveals that there is nothing abstract about them.

8    The various "abstract ideas" that ASUS asserts are simply its own summary descriptions of the

9    invention, created from thin air.  ASUS's so-called "abstract ideas" ignore important features of the

10   claims themselves, which are directed to improvements in the operation of computers and how they

11   process electronic signals, particularly audio signals.  The claims recite specific features that involve

12   multiple discrete components in order to accomplish those improvements.

13         Indeed, the prior art described in the specification of the '281 patent and cited on its face

14   establish that the asserted claims recite improvements in a technological field.  Neither the '281 patent

15   nor its prior art could be performed on pen and paper, or within the human mind.  The field of the

16   invention is centered on computer technologies and signal processing for playback of audio and video.

17   The invention ***improves existing computerized technologies***, rather than simply use a computer as a

18   tool.  Every one of the 104 asserted claims recites features of that technological improvement.

19         Notably, Defendants assert that claims 5 and 18 are representative of the asserted claims, but

20   fails to make even a *prima facie* case that those claims are representative of each of the more than 104

21   asserted claims.  Case law is clear that absent an agreement, a party challenging the validity of multiple

22   claims must submit supporting evidence for each such challenged claim.  Defendants completely fail on

23   this foundational issue.  The other asserted claims recited numerous features (and combinations of

24   features) not recited in claims 5 or 18, and Hybrid Audio does not agree that those two claims are in any

25   _____

26   [1] For convenience Exhibits 2 to 3 refer to the exhibits attached to Plaintiff's Complaint (Dkt. 1).
     Exhibits 4 to 6 refer to Exhibits attached to the co-filed Declaration of Robert Kiddie which is
27   incorporated by reference into this Opposition to Defendants' Motion to Dismiss.

28                                              1                          Case No. 3:17-cv-5947-JD

way representative of all asserted claims of the '281 patent.  Defendants' Motion fails for this reason as well.

## II.   BACKGROUND

### A.   The '281 Patent

The '281 patent discloses and claims a signal processing system that improves how computers function to encode, transmit and decode audio signals (music, voice, and the like).  In general, the patent claims systems and methods that involve encoding a digital audio signal by splitting the input signal into "sub-bands" using a plurality of "filter banks" connected to form a "tree-structured array."  (Ex. 2 at Abstract; 5:64-67; 9:19-21; 11:17-20; 12-26-65; 15:6-46.)  The patent refers to this splitting, or "encoding," of the input signal as an "analysis" operation.  (*Id.* at 5:64-67.)  The '281 patent also discloses and claims the inverse decoding process; synthesizing a signal from the sub-band components using a plurality of filter banks connected to form a tree-structured array.  The patent refers to this synthesizing, or decoding, of the signal as a "decompression" or "synthesis" operation.  (*Id.* at 15:52-54; 16:31-32.)

Data requirements for high-fidelity recordings are substantial, requiring more than one million bits per second of playback time.  (*Id.* at 2:39-41.)  Simple transmission of audio recordings, without some sort of digital processing to streamline the data, would require very lengthy transmit times, particularly back in 1992 when the invention was conceived and filed.

On the other hand, replacement of the actual frequency components by encoding a signal (in the words of the patent, encoding with an "analysis filter band") would result in defects in the signal, or "artifacts."  (*Id.* at 3:19-24.)  These artifacts would depend on the detailed characteristics of the filter banks, and at the time of the invention it was realized that there was no single "segment length" of filters that could minimize these artifacts.  (*Id.* at 3:19-24.)  When dividing up the signal for encoding and transmission, prior art systems either utilized filter banks with uniform frequency bands, which did not take advantage of bandwidths critical to the human auditory system and thus introduced noticeable distortions, or utilized a filter array structure whose filter banks used a large number of filtering levels,

Case No. 3:17-cv-5947-JD

Opposition to Defendants' Motion to Dismiss

which introduced significant "aliasing" artifacts that would also distorted the audible signal when it was played.  (*See, generally id.* at 3:53- 04:41.)

These prior art signal processing methods were also poorly suited for distribution and playback on digital computers with varying computational resources.  While some computers at the time might have the computational power to perform very heavy signal processing, many other computers lacked that power.  (*See, generally id.* at 4:42-5:31.)  The compromise was to either provide a user with a highly specialized playback configuration including the use of costly equipment; or, if wide distribution of the compressed audio material is sought, lowering the quality of the compression so that it could be played on a variety of different systems.  (*Id.* at 4:42-5:31.)  Obviously neither of these "compromises" was ideal—the first involves high cost and limited ability to share music, videos, etc., while the second involves deliberately lowering sound quality.

Recognizing these deficiencies in the prior art technology, the inventors of the '281 patent came up with novel solutions which are incorporated into the inventions of the '281 patent.  Specifically, the inventors of the '281 patent recognized that better sound quality could be maintained with lower computational and/or hardware requirements, by treating different frequency bands of the signal differently.  This treatment permitted a focus on those bands that were more important to the human auditory system.  (*Id.* at 4:9-12; 6:11-14; 9-:60-64.)  As described in more detailed below, the patent describes and claims very specific arrangements of filter banks, filters and other components to provide a high quality signal with decreased processing and transmission needs.  (*Id.* at 14:2-14; 20:40-43.)

The '281 patent was an important element in the explosion of audio and video streaming, file sharing, and the like throughout the 1990s and 2000s.  The invention arose in the early days of the Internet, and claims priority to an application filed on September 21, 1992.  Hybrid Audio's predecessor in interest participated in the standards setting organization charged with setting the technical standards designated "ISO/IEC 11172-3:1993," which is more commonly known as "MP3."  Hybrid Audio's predecessor disclosed its intellectual property to the standards organization, and the inventions of the '281 were incorporated into the MP3 technical standards.  (Dkt. 1 at ¶¶ 20-22.)

As a result, the '281 patent has been licensed to almost sixty companies, including some of the largest technology companies in the world.  While some companies took a license to the '281 patent prior to the decision in *Alice v. CLS Bank*, at least fifty companies have agreed to take a license after June of 2016, with full awareness of the *Alice* decision.  None, until ASUS, have asserted that the '281 patent claimed ineligible subject matter.  This is because the '281 patent recites numerous specific elements and arrangements which result in an improvement in computerized technology.

Indeed, over its lifetime, the '281 patent has already been the subject of numerous challenges.  In 2011, Hybrid Audio's predecessor in interest asserted the '281 patent against a number of large tech companies.  (*Hybrid Audio LLC v. High Tech Computer Corp., et. al* Case No. 6:11-cv-00195 (E.D. Tex. 2011).)  The lawsuit proceeded through claim construction.  Despite the presence of large, sophisticated and well-funded defendants, after a provisional claim construction order was issued, each defendant chose to resolve the case with a license.

During the pendency of that prior litigation, on June 18, 2012, a request for *ex parte* reexamination of the '281 patent was filed in the USPTO.  The reexamination proceedings were extensive, but ultimately they resulted in the confirmation of *every* reexamined claim, establishing that every claim of the '281 patent recites unconventional technology.  On December 1, 2015, the '281 patent received Reexamination Certificate No. RE40,281 C1, confirming patentability of all of the reexamined claims.  (Dkt. 1, Ex. 3.)

On June 27, 2017, the '281 patent was again the subject of a validity challenge, in the form of a petition for *inter partes* review.  The petition was filed by a well-funded party acting on behalf of its numerous clients, but the PTAB declined to even institute review, again confirming the novelty of the challenged claims.  (*See* Ex. 4.)  This decision again confirmed the novel and unconventional technology of the '281 patent.

### B.    Background of the Current Lawsuit

ASUS, along with three other defendants, was among the first complaints to be filed by Hybrid Audio after the Patent Office issued the *ex parte* Reexamination Certificate in December, 2015

(confirming the patentability of all of the reexamined claims).  Since the filing of that lawsuit on April 1, 2016, at least 50 other entities have taken licenses to the patent, some after litigation was filed and others without the need for litigation.

During that time, ASUS has steadfastly resisted all attempts to license the '281 patent, raising numerous frivolous issues.  For example, ASUS demanded that Hybrid Audio explain and provide documentation regarding certain issues of standing that had already been addressed in previous litigation.  As another example, ASUS's prior counsel demanded to disclose ASUS's confidential discussions with Hybrid Audio to a third party, insisting (falsely) that resolution with the third party would exhaust all claims against it.  ASUS later asserted that Hybrid Audio was required to amend its complaint to specifically identify each and every accused product, despite the fact that this is a standards-based RAND case, in which the products are easily identified through compliance with the MP3 standards.

ASUS continually sought a stay or dismissal citing various reasons including: (1) the petition for *inter partes* review filed against the patent, which was denied; (2) ASUS's false assertion that resolution with a third party would exhaust all claims against ASUS; (3) ASUS's persistent, but unfounded assertion that Hybrid Audio has committed RAND violations; and (4) laches and marking defenses that ignore the history of communications between the parties.

Once the *TC Heartland* case was decided, Hybrid Audio informed ASUS that it intended to file a motion to transfer the case to the Northern District of California.  However, ASUS insisted that the case must be *dismissed* for improper venue, opposed a simple motion to transfer, and instead cross-moved for dismissal, causing unneeded expense to Hybrid Audio to brief the issues.  All this despite the fact that the statute itself permits dismissal "*or if it be in the interest of justice, transfer*[.]"[2]  28 U.S.C. § 1406(a).  In a handwritten order reflecting the absurdity of the positions being taken by ASUS, the Massachusetts judge granted Hybrid Audio's motion to transfer and denied ASUS's cross-motion to dismiss.  The case was then transferred to this District.

---

[2] Unless otherwise indicated, emphasis in this Brief has been added.

Opposition to Defendants' Motion to Dismiss

Shortly thereafter, ASUS engaged new outside counsel.  However, ASUS has remained intractable, resisting Hybrid Audio's attempts to resolve the case amicably.  Rather than engage in meaningful negotiations, ASUS filed the instant Motion.  The Court may recall that during the scheduling conference, ASUS opted to prosecute its Motion rather than stay the case for a mere *two months* to conduct mediation.  This behavior is emblematic of ASUS's apparent strategy to avoid any responsibility for its infringement.

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

35 U.S.C. § 101 states that claims covering "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" are patent eligible.  There are judicially recognized exceptions, which include laws of nature, natural phenomena, and abstract ideas.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).  In reviewing these exceptions, the Supreme Court has recognized that "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas."  *Alice* at 2354.  Accordingly, courts should "tread carefully in construing this exclusionary principle lest it swallow all of patent law."  *Id.* at 2354.

*Alice* sets forth a two-step analysis for determining whether a claim is patent-eligible. *Alice*, 134 S. Ct. at 2354.  "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 134 S. Ct. at 2350.  Here, the question is whether the claims are directed to

Case No. 3:17-cv-5947-JD

Opposition to Defendants' Motion to Dismiss

an "abstract idea."  Second, if the claim is directed to an abstract idea, the Court should then "determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. at 2355 (quoting *Mayo Collaborative v. Prometheus Labs.*, 132 S. Ct. 1289, 1296-97 (2012)).  This involves looking the claim elements both individually and "as an ordered combination."  *Id*. at 2350.  Even a claim directed to a patent-ineligible concept may be patentable if it includes "unconventional steps" that "confine[ ] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300.

## IV.   ARGUMENT

The '281 patent is rooted firmly in computerized technologies, and is the exact opposite of patents that led to the *Alice* decision and its progeny.  The inventions recited in the various claims improve the operation of the computer, as opposed to merely using the computer as a tool.  This is a hallmark of patentability under *Alice* and related Federal Circuit precedent.  As with the claims at issue in *Amdocs*:

> ***this claim entails an unconventional technological solution*** (enhancing data in a distributed fashion) ***to a technological problem*** (massive record flows which previously required massive databases).  The solution requires arguably generic components, including network devices and "gatherers" which "gather" information. However, the claim's enhancing limitation necessarily requires that these ***generic components operate in an unconventional manner to achieve an improvement in computer functionality***.

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F. 3d 1288, 1301 (Fed. Cir. 2016).  As with the patent in *Amdocs*, the '281 patent utilizes known components (filter banks, filters and the like) in a completely new, unconventional manner, resulting in improved signal encoding and decoding by the computer.

Given this nature of the '281 patent, Defendants necessarily distort the patent and its claims in an effort to make some connection between the verbiage of Section 101 cases and the language of the patent.  The disconnect between the two, however, results in a tortured treatment of both *Alice* prongs and the related factors.

Case No. 3:17-cv-5947-JD

Opposition to Defendants' Motion to Dismiss

### A.   ASUS's Various Proposed Abstract Ideas Are All Divorced from the Language of the Asserted Claims

Defendants' analysis of the first *Alice* step relies on vast oversimplifications of the claim language and ignores specific recited structures and limitations.

Throughout its Motion, ASUS fails to consistently apply a single "abstract idea" for analysis under the *Alice* prongs.  Instead, at various points throughout its Motion, ASUS asserts that the claims of the '281 patent are directed to: "an array of filter banks that either split data or combine data" (Motion at 2); a "mathematical operation to divide data into multiple portions, and in the inverse, a mathematical operation to join multiple data portions into a single piece of data" (*id*. at 15);  "splitting and joining data" (*id*. at 15); "using a mathematical algorithm to split one piece of data in two" (*id*. at 15); "using a mathematical algorithm to combine several pieces of data into one" (*id*. at 15); "mathematical algorithms for splitting and combining data" (*id*. at 17); as well as multiple other variations on the above.

The sheer breadth and variety of ASUS's proposed abstract ideas demonstrates the weakness of its position.  Its various articulations of what the claims are "directed to"—apparently tailored to whatever argument is making at that point in its brief—each amount to a description of the general *subject matter* of the claims rather than their actual scope and content.

As the Supreme Court warned in *Alice*, "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas."  *Alice*, 134 S. Ct. at 2354.  Accordingly, courts should "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id*. at 2354.  Boiling the claims down to any of ASUS's proposed abstract ideas does exactly what the Supreme Court explicitly warned against.  "[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed, Cir. 2016).

The cases relied upon by ASUS are easily distinguished; the claims at issue in those cases are not even remotely analogous to the claims in the instant matter.  For example, the patent in *TriDim* recited generic computer components to accomplish what could be done manually by a human, *i.e.*, retrieving

and arranging documents based on frequency of use.  *TriDim Innovations LLC v. Amazon.com, Inc.* 207 F. Supp. 3d 1073, 1079 (N.D. Cal. 2016).  The asserted claim in *TriDim* recited:

> 1. A computer controlled display system for displaying document objects in a three-dimensional document workspace on a display, said computer controlled display system comprising:
>
> document receiving means for receiving document objects;
>
> positioning means for receiving user input for positioning document objects within said three-dimensional document workspace;
>
> workspace display circuitry for generating display information for displaying said three-dimensional document workspace and said document objects, said workspace display circuitry comprising:
>
> circuitry for displaying a focus space, said focus space for detail display of a document object;
>
> circuitry for displaying an immediate space, said immediate space for ephemeral positioning of document objects that are in use but not in focus; and
>
> circuitry for displaying a tertiary space, said tertiary space for positioning document objects that are not in use.

*Id.* at 1076.

Tellingly, the *TriDem* specification provided little guidance as to how to implement the invention recited in the claims.  For example, regarding the generation of the software program that would ostensibly implement the claimed inventions, the specification stated:

> The currently preferred embodiment of the present invention has been implemented on a Silicon Graphics workstation with graphics facilities as described in SGI Graphics Library Programming Guide, Silicon Graphics, Inc. of Mountain View, Calif.  The Silicon Graphics workstation provides for generating software programs which manipulate graphical objects in a three dimensional space, so ***description of programming techniques for rendering graphical objects in a three dimensional space is not deemed necessary***.

(Ex. 5 at 5:28-37.)  Likewise, with regard to the scaling of document objects, the specification further stated that this function is "performed by the rendering system of the three-dimensional computer controlled display" and thus "discussion of how document objects are scaled as they are moved through the document workspace is not necessary."  (*Id.* at 10:10-16.)  In short, the claims of *TriDem* were simply using known features in known ways; so well known that the patent declined to even describe them.

In contrast, the claims of the '281 patent include detailed features that improve the operation of the computer itself, in its ability to encode and decode a signal more efficiently and with less processing power.  Those features are taught and described by a specification that includes detailed exemplary figures and mathematical formulas for performing the steps of the claimed methods and implementing the claimed systems, as well as the specific structure of the filter arrays that comprise the claims systems.

As just one example, claim 5 recites (among other features):

> splitting a signal into subbands using a plurality of filter banks connected to form a tree-structured array having a root node and greater than two leaf nodes, each node comprising one filter bank having greater than two filters, and at least one of the leaf nodes having a number of filters that differs from the number of filters in a second leaf node.

(Ex. 2 at 24:24-30.)

There is no evidence that that this combination of components exists anywhere in the prior art, and much evidence that it does not.  Thus recognizing the deficiencies in prior art signal processing technologies, the inventors conceived of an unconventional use of filter banks with specific structures to approximate the ear's time and frequency sensitivity.  (Ex. 2 at 3:60-62; 10:45-64.)  The invention enables the processing of the signal without the aliasing effects that are introduced by using filter banks that require many levels as found in prior art technologies.  (Ex. 2 at 11:25-31.).

Other claims of the '281 patent recite yet additional features regarding the specific structures and operations that improve the computer functionality.  For example, regarding the arrangement of the filter banks, claim 12 recites "each second level filter bank having as input an output from a different filter in the first level."  Again, there is no evidence that this claim was present anywhere in the prior art, or that it is otherwise conventional, particularly when arranged with the other claimed features.  The patentability of the claims of the '281 patent is further are supported by descriptions in the specification regarding how to achieve the invention.  (*See, e.g.* Ex. 2 at 15:8-14.)

ASUS asserts that implementation of the '281 patent invention is "technology agnostic" because it can be implemented in software (e.g., as a digital filter) or hardware (using analog circuit

Case No. 3:17-cv-5947-JD

Opposition to Defendants' Motion to Dismiss

components), (Motion at 17), but this argument is a red herring.  Nothing in *Alice* rises or falls on specific implementations of the invention.  On the contrary, that fact that the '281 patent invention can realize such significant improvements in computer performance, *regardless of implementation*, enhances rather than undermines their patentability.

ASUS seeks to rely on *Digitech Image Technologies, LLC v. Electronics For Imaging, Inc.*  758 F.3d 1344, 1351 (Fed. Cir. 2014), but this case is also easily distinguishable. The asserted claim in *Digitech* merely took two sets of data and combined them into a single dataset.  *Digitech*, 758 F.3d at 1351.  In contrast, the invention of the '281 patent modifies an audio signal using an array of filter banks with a specific structure and arrangement, such that distortion in the resulting filtered audio signal is less perceptible at higher frequencies.

Unlike the device profile in *Digitech*, which merely combined information from two datasets and combined them into a single dataset, the processed signal is not the same as the source signal.  Instead, the invention results in a modified signal that reduces the necessary bandwidth but enhances the quality of the signal within frequencies audible to humans.  (*See, e.g.,* Ex. 2 at 9:60-64; 10:60-64.)  This improvement in the operation of the computer distinguishes the '281 claimed invention from *Digitech*.

ASUS also relies on *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322 (Fed. Cir. 2017), but that case is distinguishable at least for the same reasons as *Digitech*.  That is, the asserted claim merely combines separate pieces of data into a single dataset (in *RecogniCorp*, a composite image). Indeed, the prior art the *RecogniCorp* patent was intended to overcome related to police sketches, and the specification explicitly contemplated the process being performed by a human: "a police station at site A [] using an embodiment of the invention can transmit the entire composite picture of a suspect to police station at site B [] by simply sending the facial code for that facial image either verbally or through an electronic communication means []." (Ex. 6 at 1:63-2:12; 11:53-61.)  The *RecogniCorp* patent is thus a classic instance of using a computer as a tool to do what was otherwise performed by a human.  This is the exact opposite of the invention of the '281 patent.

Finally, ASUS attempts to rely on *Enfish, LLC. V. Microsoft Corp.*, but ASUS's reliance is entirely backwards.  Regardless of the dicta of *Enfish*, the case supports patentability, as it is directly analogous to the facts here.  The claims of the '281 patent, like those in *Enfish*, **recite a structure different from that found in the prior art**.  In *Enfish*, the structure was a self-referential database that had two features that were not found in the prior art relational model: first the self-referential model was able to store all entity types in a single table, and second the self-referential model could define the table's columns by rows in that same table.  *Enfish,* 822 F.3d at 1332.  In the '281 patent, the structure is a specific arrangement of filters and filter banks within a tree-structured array, namely, in which the filter banks comprise greater than two filters, and in which one of the filter banks has a number of filters that differs from the number of filters in a second filter bank.  Like the self-referential database structure of *Enfish,* the claimed structure of the filter banks recited in the '281 patent claims system enables the improvement over prior art computer systems.

### B.    Even Assuming an Abstract Idea, the '281 Patent Contains an Inventive Concept

The ordered combination of elements in the asserted claims go far beyond ASUS's absurdly broad articulation(s) of the purported abstract idea.  Evidence establishes that the recited inventions of the '281 patent significantly improve the operation of the computer.  For each of these reasons, the claims encompass inventive elements that satisfy the second prong of the *Alice* test.

#### 1.    The Claims Each Recite Individual Elements and an Ordered Combination that Go Far Beyond the Mere Abstract Idea Proposed by ASUS

The asserted claims of the '281 patent each amount to significantly more than ASUS's purported abstract ideas.  These asserted claims each recite multiple elements that result, in contrast to prior art methods, in an improvement to the operation of the computer.

As noted above and as just one example, claim 5 recites "splitting a signal into subbands using a plurality of filter banks connected to form a tree-structured array having a root node and greater than two leaf nodes, each node comprising one filter bank having greater than two filters, and at least one of the leaf nodes having a number of filters that differs from the number of filters in a second leaf node."

(Ex. 2 at 24:24-30.)  The claim thus recites an unconventional use of filter banks with specific structures to approximate the ear's time and frequency sensitivity.  (Ex. 2 at 3:60-62; 10:45-64.)  The invention enables the processing of the signal without the aliasing effects that are introduced by using filter banks that require many levels as in prior art technologies.  (Ex. 2 at 11:25-31.).

Indeed, *Alice* itself notes that the use unconventional elements are hallmarks of patent eligible inventions that do not fall within the "abstract idea" exception.  Specifically, the Supreme Court noted that the process claimed in *Diamond v. Dierh,* which involved the unconventional use of temperature measurements from a thermocouple fed into a computer, supported patent eligibility for a process for curing rubber.  *Alice,* 134 S. Ct. at 2358 (citing *Dierh* 450 U.S. 175 (1981)).

The Federal Circuit has likewise upheld patentability of claims for the same reasons.  In *Amdocs (Isr.) Ltd., v. Openet Telecom, Inc.*, the Federal Circuit analyzed claims for which the patent specification "disclosed a distributed system architecture comprising special-purpose components configured to cooperate with one another according to defined protocols in a user-configurable manner for the purpose of deriving useful accounting records in a more scalable and efficient manner than previously possible."  *Amdocs*, 841 F.3d at 1306.  The court stated that while the components "may be generic at first blush," the intrinsic record established that the claims "describe a specific, unconventional technological solution, narrowly drawn to withstand preemption concerns, to a technological problem."  *Amdocs*, 841 F.3d at 1306.

Other cases similarly hold that unconventional features or arrangements of features support patentability.  *See BASCOM,* 827 F.3d at 1350 (the inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art; inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional, pieces); *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299, 1303 (Fed. Cir. 2016) (using unconventional rules that relate sub-sequences of phonemes, timings, and morph weight sets, is not directed to an abstract idea and is therefore patent-eligible subject matter); *Enfish*, 822 F.3d at 1330 (finding as patent-eligible an unconventional logical model which included all data entities embodied in a single self-referential

table where convention was to use multiple, relational models); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014) (holding that the claims at issue here specify how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink).

As with each of these cases, the asserted claims of the '281 patent recites discrete elements which are combined and utilized in an unconventional manner, resulting in an inventive whole. They thus fall outside the "abstract idea" exception to Section 101, and instead recite patentable subject matter. ASUS's simplistic treatment of the asserted claims should be rejected.

### 2.      The Claimed Inventions Improve the Operation of the Computer

Contrary to ASUS's assertions otherwise, the inventions of the '281 patent improve the operation of the computer. This is evidenced by the patent specification itself, which identifies problems with prior computer systems and teaches the solutions set forth in the '281 patent and ultimately recited in the claims.

For example, the invention reduces the computational workload of the computer. "If a prior art one level filter bank is utilized, the workload will be approximately 8,704 multiplies and adds. If the filter bank is replaced by a two level filter bank according to the present invention, then the filter bank will consist of 9 filter banks, each dividing the frequency spectrum into 8 bands. The computational workload inherent in this arrangement is only 5,760 multiplies and adds. Hence, a filter bank according to the present invention typically requires less computational capability than a one level filter bank according to the prior art." (Ex. 2 at 14:2-12.)

The invention is premised on the recognition that certain frequencies are more important to the human audible system:

> In addition, the ear's sensitivity to a noise source in the presence of a localized frequency component such as a sine tone depends on the relative levels of the signals and on the relation of the noise spectral components to the tone. The errors introduced by approximating the frequency components may be viewed as "noise". The noise becomes significantly less audible if its spectral energy is within one critical bandwidth of the tone. Hence, it is advantageous to use frequency decompositions which approximate the critical band structure of the auditory system.

1   (Ex. 2 at 3:53-62.)

2           While the '281 patent recognizes a problem related to the human cognition of sound, its claims

3   differ vastly from just reciting those concepts.  In contrast to patents that merely claim the abstract idea

4   or law of nature, the '281 patent describes, *and the claims recite*, a specific set of structural components

5   and method steps that, in combination, improve the function of the computer itself to achieve better

6   performance.  The use of a specific arrangement of filter banks and filters in a manner recited by the

7   claims results in the reduction of aliasing effects inherent in prior art systems utilizing a tree-structured

8   array.  (Ex. 2 at 11:17-31.)

9           This type of improvement in computer operations is exactly what the Federal Circuit has pointed

10   to in multiple cases upholding validity of claims under Section 101.  In *Enfish*, the asserted patents

11   claimed an improvement over the relational database model that allowed storing information in a single

12   table, by making use of a special row defining the characteristics of a column in that same table.  *Enfish*,

13   822 F.3d 1327, 1333.  In overturning the district court's decision of unpatentability, the Federal Circuit

14   upheld claims directed to a specific improvement in the way computers operate to store and retrieve

15   data, embodied in a self-referential table.  *Id.* at 1336.  Tellingly, the Federal Circuit relied on the

16   specification's disclosure of a number of improvements over prior art databases.  *Id.* at 1337.  Those

17   facts are precisely on point here; the '281 patent claims recite a technical improvement over

18   *computerized* prior art in the same field.

19           In *Amdocs v. Openet,* the Federal Circuit likewise reversed a district court decision of

20   unpatentability.  The court explained that the claims at issue, even if directed to an abstract idea,

21   "contain[] a sufficient 'inventive concept'" to render them patent-eligible.  *Amdocs*, 841 F.3d 1288,

22   1300 (Fed. Cir. 2016).  Although the claims may recite generic components, those components work "in

23   an unconventional distributed fashion to solve a particular technological problem."  *Amdocs*, 841 F.3d at

24   1301.  The same is true here.  While filters and filter banks were known components, the specific

25   arrangement recited by the claims improves the operation of the computer.

26

27

28                                    15                 Case No. 3:17-cv-5947-JD

                                        Opposition to Defendants' Motion to Dismiss

Likewise, in *BASCOM v. AT&T Mobility*, the Federal Circuit found that claims directed to "filtering Internet content" are patent-eligible under *Alice*. *BASCOM*, 827 F.3d 1341, 1352 (Fed. Cir. 2016). The court, under step two of the Alice test, found that the claims contained an "inventive concept" in the "ordered combination of claim limitations." *BASCOM*, 827 F.3d 1352. The court noted that "[f]iltering content on the Internet was already a known concept, and the ['606 patent describes how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content." *BASCOM*, 827 F.3d 1350. Again, that is exactly on point with the facts here.

Finally, in *Trading Technologies Int'l v. CQG, Inc.*, 2017 U.S. App. LEXIS 834 (Fed. Cir. Jan. 8, 2017), the Federal Circuit determined that a graphical user interface (GUI) for a commodities trading platform was patent eligible. *Trading Technologies*, 2017 U.S. App. LEXIS 834 at *9. The asserted patents solved problems that arise when a trader attempts to enter an order at a particular price, but misses the price because the market moved before the order was entered and executed. The court found that the patents described technological improvements in the interface that commodities traders use. *Trading Technologies*, 2017 U.S. App. LEXIS 834 at *2-7. Here, reducing the aliasing effects of prior art filter bank systems, along with reducing the processing needs of the computer, represent exactly the type of technological improvements that the Federal Circuit has held support patentability.

### C.     A Preemption Analysis Confirms that the '281 Patent Is Not Abstract

ASUS's preemption analysis undermines its entire argument, and demonstrates that the "abstract idea(s)" it articulates earlier in its Motion bear no real relationship to the claims. No longer does ASUS assert that the claims are directed to the much broader "an array of filter banks that either split data or combine data." (Motion at 1.) Instead, ASUS's preemption argument changes course, alleging that "the inventions of the '281 patent would preempt the use of lower level filter banks with non-uniform filter banks (*i.e.*, having a non-uniform number of filters), with more than two filters." (Motion at 24.)

This (attempted) sleight of hand reveals the weakness inherent in ASUS's entire Motion. ASUS must assert an absurdly broad "abstract idea" to even argue the basic *Alice* framework. But when tested through the lens of *preemption*, it becomes clear that the various "abstract ideas" asserted by ASUS bear

no real resemblance to what the claims actually cover.  Thus ASUS is forced to pivot to an entirely different "idea" modeled on the actual claim language to argue preemption.  But this new "idea" is not abstract at all.  It is a new improvement in computer technologies, which is entitled to patent protection.

Indeed, any valid patent claim of course "preempts" the use of the particular inventive technology that falls within its scope.  That is precisely the purpose of the patent system.  By simply paraphrasing the claim language to assert its preemption argument, and abandoning the formulations of its "abstract idea," ASUS itself reveals why its Motion should be denied.

A review of the actual facts here establishes that there is no real preemption issue.  The prior art cited on the face of the patent demonstrates other ways to encode or compress information.  The existence of these other audio compression formats confirms that the asserted claims do not preempt the abstract idea of "splitting and joining data," or any other so-called abstract idea asserted by ASUS.  Contrary to ASUS's argument, the preemption analysis *confirms* the patentability of the '281 patent claims.

### D.   ASUS Has Not Addressed Each Asserted Claim or Established that the Claims It Addresses Are Representative

ASUS provides no evidence or argument to establish that the two patent claims it addresses within its Motion are representative of all asserted claims, despite a clear obligation to do so. "[A] party challenging the validity of a claim, absent a pretrial agreement or stipulation, must submit evidence supporting a conclusion of invalidity of each claim the challenger seeks to destroy."  *Shelcore, Inc. v. Durham Indus., Inc.,* 745 F.2d 621, 625 (Fed. Cir. 1984); *see, e.g.*, *Alice Corp. Pty. Ltd., v. CLS Bank International*, 134 S.Ct 2347, 2352; *see also StoneEagle Services, Inc. v. Pay-Plus Solutions, Inc.*, No. 13-2240, 2015 U.S. Dist. LEXIS 15144, at *10 (M.D. Fla. Feb. 9, 2015) (denying Rule 12 motion where defendant failed to meaningfully address each challenged claim and there was no stipulation to the representative nature of the claims addressed in defendant's motion).

Here, the complaint asserts claims 5-6, 9-13, 15-22, 24-30, 32-35, 38-42, 45-49, 50-51, 53, 55-61, 63, 65-121.  Of these 104 asserted claims, ASUS addresses only addresses claims 5 and 18 in any

Opposition to Defendants' Motion to Dismiss

substantive manner.  ASUS's Motion *purports* to address claims 26, 34, 41, 48, 57, 66, 71, 46, 83, 90, 95, 100, 107, 114, 116, 118, and 120 but does so only in passing with conclusory statements, without meaningfully addressing the specifics of any of these claims.  Indeed, ASUS completely ignores claim 12 and neither submits any evidence nor makes any argument regarding asserted claim 12.

Hybrid Audio does not agree that claims 5 and 18 of the '281 patent are representative.  Indeed, they are not.  A simple comparison of claims 5 and 18 with even just their own dependent claims, demonstrates that other claims of the '281 patent recite numerous additional elements not present in claims 5 or 18:

- The method of claim 5, wherein at least one of the filter banks is designed to use polyphase components. – claim 10
- The method of claim 10, wherein the polyphase components are generated using a window comprising 512 samples. – claim 11
- The system of claim 48, further comprising a modulator designed to modulate a first symbol onto a carrier having a first bandwidth, and a second symbol onto a carrier having a second, different bandwidth – claim 54

ASUS bears the burden of establishing that claims 5 and 18 are representative of the other asserted claims.  *Cronos Techs., LLC v. Expedia, Inc.*, 2015 U.S. Dist. LEXIS 118976 at *8-9 (D. Del. Sept. 8, 2015) ("As there is no indication that the parties have agreed that [the analyzed claims are] representative for purposes of the Court's § 101 analysis, Defendants must provide at least some meaningful analysis for each of the challenged claims.").  Here it has made zero effort to do so, nor can it in light of the differences set forth just above.

The failure to meaningfully address each asserted claim, and the complete failure to address at all at least one asserted claim, justifies the summary denial of ASUS's Motion as to all claims other than 5 and 18.  *Modern Telecom Sys. LLC v. Earthlink, Inc.*, 2015 U.S. Dist. LEXIS 33835, at *20-21 (C.D. Cal. Mar.17, 2015) (finding defendants failed to meet burden to show ineligibility because their "argument amounts to a recitation of the elements of each representative claim followed by a conclusory

Case No. 3:17-cv-5947-JD

Opposition to Defendants' Motion to Dismiss

1  characterization of the claims as 'unlimited,' 'so abstract and sweeping as to cover any and all uses of

2  them,' and 'recit[ing] nothing more than an ineligible concept'").  For this reason alone, ASUS's Motion

3  on those claims should be denied.

4  **V.     CONCLUSION**

5       For the reasons set forth above, ASUS's Motion should be denied.

6

7                                                By: */s/ Robert Kiddie*                          

   Dated: January 25, 2018

8                                                Robert Kiddie(pro hac vice)
                                                 rkiddie@devlinlawfirm.com
9                                                Timothy Devlin (pro hac vice)
                                                 tdevlin@devlinlawfirm.com
10                                               1306 N Broom Street, Suite 1
                                                 Wilmington, DE 19806
11                                               Devlin Law Firm LLC
                                                 Telephone: (302) 449-9010
12                                               Facsimile: (302) 353-4251

13                                               Seth Wesley Wiener
                                                 sethwiener@yahoo.com
14                                               Law Offices of Seth W. Wiener
                                                 609 Karina Court
15                                               San Ramon, CA 94582
                                                 Telephone: (925) 487-5607
16
                                                 Counsel for Plaintiff
17                                               Hybrid Audio, LLC

18

19  * Filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's
20  content and have authorized the filing.

21

22

23

24

25

26

27

28

                                   19                      Case No. 3:17-cv-5947-JD

                                               Opposition to Defendants' Motion to Dismiss

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that counsel of record who are deemed to have consented to electronic service

3

are being served on this 25th of January, 2018, via the Court's CM/ECF system per Local Rule CV-5-

4

1(h)(1)

5

6

7

8

/s/ Robert Kiddie
Robert Kiddie

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:17-cv-5947-JD

Opposition to Defendants' Motion to Dismiss