UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HYBRID AUDIO, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ASUS COMPUTER INTERNATIONAL, et al.,<br><br>Defendants. | Case No. 3:17-cv-05947-JD<br><br>**ORDER RE MOTION TO DISMISS**<br>Re: Dkt. No. 49 |

In this patent dispute, Asus Computer International and ASUSTeK Computer Inc. (together, "Asus") move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 49. The motion is denied.

## BACKGROUND

The patent-in-suit is U.S. Reissue Patent No. RE40,281 ("'281 patent"), entitled "Signal Processing Utilizing a Tree-Structured Array." Dkt. No. 1 ¶¶ 10-15. It is a reissue of U.S. Patent No. 6,252,909, and a reexamnination certificate was issued in December 2015. *Id.* The original patent was issued on June 26, 2001, and claimed priority to September 21, 1992. Dkt. No. 1-2 at 1. The patent expired on September 21, 2012. Dkt. No. 1 ¶ 16. The claimed invention "relates to audio compression and decompression systems," Dkt. 1-2 at 1:22-23, and is alleged to be a component of the MP3 audio format, Dkt. No. 1 ¶ 22; Dkt. No. 1-4 at 1.

Hybrid Audio, LLC ("Hybrid Audio") filed this patent infringement suit against Asus in April 2016, seeking royalties from when Asus received notice of the patent, January 5, 2011, to the expiration date, September 21, 2012, among other relief. Dkt. No. 1 ¶ 18. The previous owner of the '281 patent was prevented from seeking royalties during the pendency of a patent reexamination from June 2012 to December 2015. *Id.* at ¶ 16.

The case was filed in the District of Massachusetts and transferred to this district in October 2017 under 28 U.S.C. § 1406(a), after the Supreme Court published *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017). Dkt. Nos. 25, 27, 30. Hybrid Audio asserts that Asus infringed claims 5-6, 9-13, 15-22, 24-30, 32-35, 38-42, 45-49, 50, 51, 53, 55-61, 63 and 65-121 of the '281 patent in multiple products and services that utilize the MP3 audio file format. Dkt. No. 1 ¶¶ 24, 33.

Asus moved to dismiss for patent ineligibility under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014). Dkt. No. 49. Asus says that the '281 patent states claims that are nothing more than an unadorned abstract idea in the form of mathematical algorithms, with no saving inventive concept. *See id.* at 7-8. But the plain language of the patent and other sources "properly considered on a motion to dismiss, such as the complaint," *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018), demonstrate that the claims are "directed to a specific improvement to the way computers operate," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016), and therefore constitute a non-abstract patent-eligible invention.

## DISCUSSION

### I. LEGAL STANDARDS

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet that rule and survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This does not impose a probability requirement at the pleading stage. It simply calls for enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility analysis is "context-specific" and not only invites, but "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion. In many cases,

too, evaluation of a patent claim's subject matter eligibility under § 101 can proceed even before a formal claim construction." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) (citations omitted); *see also Aatrix*, 882 F.3d at 1125. But as the circuit has recently emphasized, the question of eligibility may be determined at the pleadings stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125 (citing *FairWarning IP, LLC v. Iatric Sys.*, *Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016)); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 18-2178, 2019 WL 2588278, at *10 (Fed. Cir. June 25, 2019) (vacating Rule 12(b)(6) and Rule 12(c) dismissals where complaint made plausible and "well-pleaded allegations" of eligibility). This is particularly true for the element of an inventive concept, which raises a question of fact that can be resolved in a motion to dismiss only if the answer may be found in the complaint, the patent, and matters subject to judicial notice. *Aatrix*, 882 F.3d at 1128.

To be sure, a patentee cannot avoid dismissal for ineligible claims purely on the basis of conclusory or generalized statements, and fanciful or exaggerated allegations that later prove to be unsupported may lead to fee shifting or other sanctions. *See Cellspin*, 2019 WL 2588278, at *8 ("While we do not read *Aatrix* to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss, plausible and specific factual allegations that aspects of the claims are inventive are sufficient."); *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1373 (Fed. Cir. 2018) (Moore, J., concurring in denial of rehearing en banc) ("[I]f the allegations in the complaint about the invention as claimed ultimately lack evidentiary support or if the case is exceptional, district courts can award attorneys' fees to the accused infringer under either Rule 11 or [35 U.S.C.] § 285 to compensate the accused infringer for any additional litigation costs it incurs."). But the inquiry in a motion to dismiss is focused on the contents of the complaint and the plain words of the patent that is incorporated by reference. To the extent claim construction issues might arise, the Court should adopt the patentee's proposed constructions. *Aatrix*, 882 F.3d at 1125; *IPLearn-Focus, LLC v. Microsoft Corp.*, No. 14-cv-00151-JD, 2015 WL 4192092, at *3 (N.D. Cal. July 10, 2015), *aff'd*, 667 F. App'x 773 (Fed. Cir. July 11, 2016).

Here, the Rule 12(b)(6) evaluation has been substantially streamlined by the complaint and the parties' arguments. Plaintiff does not object to resolving the Section 101 question in the context of defendants' motion and neither side has called for claim construction as part of the eligibility inquiry. No construction disagreements were identified in the briefs. Consequently, the Section 101 inquiry may properly be made at this stage of the case.

For the merits of the Section 101 issue, the scope of patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The "laws of nature, physical phenomena, and abstract ideas" are "specific exceptions to § 101's broad patent-eligibility principles." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010) (citation omitted). These exclusions are intended to guard against undue preemption of innovation and invention. *Alice*, 573 U.S. at 216 (citing U.S. Const. art. I, § 8, cl. 8). The Court must "distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more," because overbroad patent protection "would risk disproportionately tying up the use of the underlying ideas." *Id.* at 217 (alterations in original) (internal quotation marks and citation omitted).

Hybrid Audio proposes that the recent decision in *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524 (2019), has changed this well-mapped terrain. As Hybrid Audio puts it, the "decision in *Henry Schein* calls into question whether the judicial exceptions to patentable subject matter courts have recognized -- laws of nature, natural phenomena, and abstract ideas -- are similarly inconsistent with the plain text of Section 101." Dkt. No. 70 at 2. That is an idiosyncratic reading of *Henry Schein*, and the Court sees no indication in the opinion that the Supreme Court intended to change the *Alice* landscape. In any event, the question need not be taken up in detail because the Court finds patent eligibility.

*Alice* established a two-part test for the Section 101 inquiry. First, the Court determines "whether the claims at issue are directed to a patent-ineligible concept" such as an abstract idea, law of nature or natural phenomenon. *Alice*, 573 U.S. at 218. It is often "sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases" for purposes of the step one analysis. *Enfish*, 822 F.3d at 1334; *see also Alice*, 573 U.S. at 221.

4

The "purely functional nature of the claim confirms [whether the patent] is directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (describing "abstract" as turning on "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it"); *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018) ("For an application of an abstract idea to satisfy step one, the claim's focus must be something other than the abstract idea itself."). But oversimplifying the claims should be avoided because "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice*, 573 U.S. at 217 (second alteration in original) (internal citation omitted).

If a patent is directed to a patent-ineligible concept, the second step in *Alice* is to look for an "'inventive concept' -- *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217-18 (alteration in original) (internal quotation marks and citation omitted). This step asks, "[w]hat else is there in the claims before us?" *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012). The answer must include something "significantly more" than the abstract idea itself. *BSG Tech*, 899 F.3d at 1290. "It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve more than performance of 'well-understood, routine, conventional activit[ies] previously known to the industry.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (alteration in original) (quoting *Alice*, 573 U.S. at 225). In addition, merely reducing an abstract concept to a particular technical platform is not enough to provide the inventive element needed to support a patent. *Elec. Power Grp., LLC, v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *TriDim Innovations LLC v. Amazon.com, Inc.*, 207 F. Supp. 3d 1073, 1080 (N.D. Cal. 2016). "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been

transformed into a patent-eligible application of an abstract idea." *BSG Tech*, 899 F.3d at 1290-91.

The *Alice* steps are sequential. If the Court finds that "the claims are not directed to an abstract idea under step one of the *Alice* analysis," it does not need to proceed to the second step. *Enfish*, 822 F.3d at 1339 (citing *Alice*, 573 U.S. at 217); *see also Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1349 (Fed. Cir. 2018).

## II. REPRESENTATIVE CLAIMS

The parties have not agreed on a representative claim for the motion. Asus says that claims 5 and 18 are representative, Dkt. No. 49 at 9-10, although it also addresses arguments to the other claims, albeit in rather cursory form, *id.* at 26-28. Hybrid Audio rejects treating claims 5 and 18 as representative. Dkt. No. 59 at 21-23. Even so, the Court "may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). While the complaint features 104 asserted claims in total, Hybrid Audio does not offer any cogent reason or "meaningful argument for the distinctive significance" of the remaining 102. *See* Dkt. No. 59 at 21-23. In addition, a plain reading of the patent indicates that claims 5 and 18 are properly treated as representative for purposes of evaluating the motion to dismiss. The Central District of California reached the same conclusion on the representativeness of claims 5 and 18 in another suit involving the '281 patent. *Hybrid Audio, LLC v. Visual Land, Inc.*, No. 17-cv-08968-RSWL-AGR, 2018 WL 1684309, at *3 (C.D. Cal. Apr. 5, 2018).

Claim 5 claims a method for data compression and recites:

> 5. A signal processing method comprising:
>
> splitting a signal into subbands using a plurality of filter banks connected to form a tree-structured array having a root node and greater than two leaf nodes, each node comprising one filter bank having greater than two filters, and at least one of the leaf nodes having a number of filters that differs from the number of filters in a second leaf mode.

Dkt. No. 1-2 at 23:23-30.

6

Claim 18 is essentially the reverse and claims a method for data decompression. It recites:

> 18. A signal processing method comprising:
>
> synthesizing a signal using a plurality of synthesis filter banks connected to form a tree-structured array having greater than two leaf nodes and a root node,
>
> wherein each of the nodes comprises one synthesis filter bank having greater than two filters, with at least one of the leaf nodes having a number of filters that differs from the number of filters in a second leaf node.

*Id.* at 25:4-11.

Hybrid Audio claims that the "inventions of the ['281] patent resolve technical problems related to the use of signal processing technology." Dkt. No. 1 ¶ 27. Further, it alleges the "claims of the ['281] patent recite one or more inventive concepts that are rooted in signal processing technology [and] recite an invention that is not merely the routine or conventional use of signal processing technology." *Id.* at ¶¶ 28-29.

### III. THE CLAIMED INVENTION IS PATENTABLE

The *Alice* inquiry ends at step one on this motion because the representative claims are not directed to an abstract idea or other ineligible subject matter. They assert a specific and tangible improvement to computer functionality, namely the processing of audio data, that is not abstract. *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 918 F.3d 1368, 1375 (Fed. Cir. 2019); *Ancora,* 908 F.3d at 1347-48 (and cases therein). This is not a case where the claims state an abstract idea "for which computers are invoked merely as a tool." *Finjan, Inc. v. Blue Coat Sys, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quoting *Enfish*, 822 F.3d at 1336). Nor is it one where the "basic thrust might more easily be understood as directed to an abstract idea" so that analysis of the claimed technological improvement should take place at *Alice* step two. *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016).

Turning to the specifics of step one, the primary task is to ascertain "the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017) (internal quotation marks and citation omitted). To that end, the claim may

be "considered in light of the specification." *Enfish*, 822 F.3d at 1335; *see also IPLearn-Focus*, 2015 WL 4192092, at *4. For the digital technology involved here, the relevant inquiry is "whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *Enfish*, 822 F.3d at 1335; *see also Finjan*, 879 F.3d at 1304 ("The question, then, is whether [the claim] constitutes an improvement in computer functionality.").

The purpose of the '281 patent is to make better computers, specifically by enabling them to process audio signals more accurately and efficiently. Its plain language leaves no reasonable doubt that the representative claims are directed to a specific improvement in the way computers operate. According to the specification, "it is the object of the present invention to provide an improved multi-carrier transmission system." Dkt. No. 1-2 at 2:26-27. It seeks "to allow playback of high fidelity recordings on the commonly used computer platforms without the addition of expensive special purpose hardware." *Id.* at 5:4-6. In effect, the '281 patent makes a better radio and not just changes the channel. The patent is also directed to improving the capacities of computer networks. *Id.* at 4:60-63 (Computer "based systems using compressed audio and video data promise to provide inexpensive playback solutions and allow distribution of program material on digital disks or over a computer network.").

Courts have previously recognized the particular advantages to computers that flow from the implementation of the '281 patent as evidence of non-abstractness at *Alice*'s first step. For example, one of the objects of the '281 patent is "to provide a multi-carrier transmission system having a lower computational workload than" other signal processing systems. *Id.* at 2:28-31. The patent accomplishes this, in part, by employing "narrower subchannels at the low frequencies and wider subchannels at the higher frequencies in a multicarrier modulation system." *Id.* at 8:51-54; *see also id.* at 17:19-21:48 (describing other ways the invention provides "reduced computational workload"). Efficient computer processing is indicative of patent-eligible subject matter. *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1009 (Fed. Cir. 2018). With the '281 patent, efficiency enables the claimed signal processing systems to be more adaptable to diverse system resources scenarios, which is itself a further indication of patentable subject matter in the software context. Dkt. No. 1-2 at 5:20-30; *see Finjan*, 879 F.3d at 1304; *Enfish*, 822 F.3d at

8

1333 (holding patent non-abstract, in part, because invention could be used without "extensive modeling and configuration of the various tables and relationships in advance of launching the database").

Another technical improvement associated with patentable subject matter in this context is limiting the need for specialized computer equipment. *See Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017) (describing non-abstract improvements to computer based on "flexibility to operate with multiple different processors"). One of the advantages of the '281 patent is that it enables more computers to play higher quality audio under more circumstances "without the addition of expensive special purpose hardware." Dkt. No. 1-2 at 4:53-5:19. Similarly in *Enfish*, "more effective storage" was one of the benefits to a computer that led the Federal Circuit to conclude the self-referential spreadsheet at issue was not abstract under *Alice*. *Enfish*, 822 F.3d at 1333; *see also BSG Tech*, 899 F.3d at 1288 ("Both *Enfish* and *Visual Memory* concerned claims that focused on improved ways in which systems store and access data."). This invention is directed to creating "systems for compressing audio sound tracks to reduce the storage and bandwidth requirements." Dkt. No. 1-2 at 2:46-48.

Overall, the '281 patent embodies several types of improvements to computers that have been deemed to be non-abstract. *See, e.g.*, *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018) (and cases therein). As in *Ancora*, the claims here are directed to "an improvement in computer functionality that has 'the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it.'" *Ancora*, 908 F.3d at 1349 (quoting *InvestPic*, 898 F.3d at 1167).

These characteristics distinguish the '281 patent from the compression patent determined to be ineligible in the unreported decision in *Voit Technologies, LLC v. Del-Ton, Inc.*, 757 F. App'x 1000 (Fed. Cir. 2019). The patent in that case did not explain how it improved "compression techniques or the functioning of the computer," and merely used "conventional compression techniques to carry out the claimed invention." *Voit*, 757 F. App'x at 1003. But like the tabbed spreadsheet in *Data Engine*, the '281 patent has "a specific structure . . . that performs a specific function." *Data Engine*, 906 F.3d at 1010-11. Through the process of utilizing bands of

9

nonuniform length by splitting, and then synthesizing, signals into filter banks where "at least one of the leaf nodes [has] a number of filters that differs from the number of filters in a second leaf node," Dkt. No. 1-2 at 25:9-11 (claim 18), the invention can better approximate audio (more signal relative to noise), without the system requirements of the prior art, *id.* at 3:43-4:63. *See also id.* at 11:4-9 ("Ideally, an audio decomposition should exhibit a time and frequency dependency similar to that of human hearing. This may be accomplished by relating the frequency divisions or subbands of the decomposition to the critical bandwidths of human hearing.").

Asus's suggestion that the '281 patent is nothing more than a nonpatentable mathematical algorithm is not persuasive. *See* Dkt. No. 49 at 21-25; Dkt. No. 61 at 9-15. As Asus recognizes in its reply brief, Dkt. No. 61 at 12-15, the Supreme Court has long endorsed patenting inventions that use algorithms to improve a technological process. *See Alice*, 573 U.S. at 223 (discussing *Diamond v. Diehr*, 450 U.S. 175 (1981)). More recently, the Federal Circuit recognized this principle in *Thales Visionix Inc. v. United States*, 850 F.3d 1343 (Fed. Cir. 2017). Reversing a motion for judgment on the pleadings that invalidated a patent for an inertial tracking system, the court held that just because "a mathematical equation is required to complete the claimed method and system does not doom the claims to abstraction." *Thales*, 850 F.3d at 1349. Similar to *Thales*, the mathematical algorithms in the '281 patent are used to "reduce errors." *Id.*; *see* Dkt. 1-2 at 3:26-42.

While the specification indicates the invention is likely to be "implemented on digital computers which may be general purpose computers or special computers designed to more efficiently carry out the operations," Dkt. No. 1-2 at 3:3-5, this does not preclude patentability as Asus contends, Dkt. No. 49 at 29, because the claims are directed to an improvement in the functioning of a computer. *See Enfish*, 822 F.3d at 1338. Asus also goes too far in trying to portray the computer-centric audio processing in the '281 patent as nothing more than an activity that can be done by a human or "directed to methods or organizing human activity." Dkt. No. 49 at 25. That is patently not the case.

Asus's reliance on *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017), is equally misdirected. Dkt. No. 49 at 25; Dkt. No. 61 at 10, 14-15. There, the Federal Circuit found

the patent embodied "standard encoding and decoding, an abstract concept long utilized to transmit information." *RecogniCorp*, 855 F.3d at 1326. *RecogniCorp* is not germane because "the claims [here] are directed to 'a specific means or method' for improving technology [not] to an abstract end-result." *Id.* (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)); *see also id.* at 1328 ("RecogniCorp has not alleged a particularized application of encoding and decoding image data."). The '281 patent does not claim standard compression, but rather "a specific means or method for improving technology"-- bands of nonuniform length. *See also* Dkt. No. 1-2 at 13:63-67 (noting "that a two level filter bank of the type used in the present invention significantly reduces the overall computational workload even in situations in which the frequency spectrum is to be divided into uniform bands").

## CONCLUSION

Since "it is clear for the reasons stated that the claims are not directed to an abstract idea," the Court need not proceed to *Alice* step two. *Enfish*, 822 F.3d at 1339; *Ancora*, 908 F.3d at 1349. The motion to dismiss is denied.

**IT IS SO ORDERED.**

Dated: July 11, 2019

JAMES DONATO
United States District Judge

11